```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA                              :
                                                      :
             v.                                       :
                                                      :
DANIEL L. GORDON,                                     :     03 Cr. 1494 (GEL)
                                                      :
                    Defendant.                        :     OPINION AND ORDER
                                                      :
------------------------------------------------------x
                                                      :
DSI ASSOCIATES, LLC,                                  :
                                                      :
                    Movant.                           :
                                                      :
------------------------------------------------------x
```

GERARD E. LYNCH, District Judge:

     In this criminal proceeding, Daniel L. Gordon, the defendant, has pleaded guilty to one count each of wire fraud, money laundering, and conspiracy. The criminal Information charging these crimes also seeks forfeiture of certain property, including proceeds of the sale of 7923 shares of the stock of Daticon, Inc., held by Gordon through an entity called Kings Holdings, LLC ("Kings"). (Information ¶ 26.) The Daticon shares (and the proceeds of their sale) are alleged to be property constituting or derived from proceeds traceable to Gordon's wire fraud, see 18 U.S.C. § 981(a)(1)(C), or property involved in or traceable to his money laundering, see id. § 982(a)(1). (Information ¶ 26, Preliminary Forfeiture Order at 1.) Gordon agreed, in a written plea agreement with the Government, to the forfeiture of the proceeds of the sale of these shares. (Preliminary Forfeiture Order at 3-4.)

By the present motion, DSI Associates, LLC, the entity from whom Gordon acquired the shares, seeks to intervene in the criminal proceeding, in order to contest the forfeiture of a portion of these proceeds, arguing that the acquisition of some 15% of the underlying shares was attributable, not to the tainted funds, but to an "unrelated and untainted" promissory note executed by Gordon. (DSI Mot. at 2.) The motion will be denied.

## BACKGROUND

The relevant facts are largely uncontested.

In August 2000, Gordon defrauded his employer, Merrill Lynch & Co., Inc., of $43 million. Through a series of transactions in violation of the federal money laundering statue, 18 U.S.C. § 1956, approximately $30 million of the fraud proceeds landed in an account controlled by Gordon, in the name of Kings.

In November 2000, Kings purchased 70% of the outstanding shares of Daticon (a total of 7923 shares) from the putative intervenor, DSI. Of the total purchase price of $26,806,353, approximately 85% (roughly $23 million) was paid in cash; the parties do not dispute that the cash was derived from Gordon's fraud and money laundering. The remaining 15% of the purchase price consisted of a promissory note from Kings to DSI for approximately $4 million.

As Gordon's legal troubles mounted, he failed to fulfill the terms of the note. According to the note's terms, Kings was required to make quarterly interest payments, beginning on December 31, 2000. These payments were made for some time, but Kings failed to make the payment due on December 31, 2002. DSI eventually agreed to accept a demand note for $2.5 million to settle its dispute with Kings, and when Kings's shares were sold to a third party (for approximately $35,000,000) and the note was not paid on DSI's demand, DSI obtained an order,

in Connecticut Superior Court, authorizing it to attach $2.75 million of Kings's (Gordon's) share of the proceeds to cover what it is owed on the note.

DSI's claims that because the promissory note was separate from the proceeds of Gordon's criminal activities, only the proceeds of the sale of 85% of Kings's Daticon shares (the "tainted" shares) are forfeitable, and the proceeds of the sale of Kings's remaining "untainted" shares remain available to satisfy DSI's claim against Kings. The Government maintains that all of the proceeds of the sale of Kings's Daticon shares are forfeitable.

**DISCUSSION**

As a threshold matter, DSI argues that the Government lacks "standing" to object to its intervention, having relinquished its claim to the funds in question in connection with a settlement of competing claims to the forfeited proceeds in a separate dispute with the victims of the underlying fraud, Merrill Lynch and Allegheny Energy, Inc. This argument is meritless. The Government remains a party to the underlying criminal matter, and properly seeks a final order of forfeiture against Gordon and the property in question. The agreement among the Government, Merrill, and Allegheny can have no practical effect unless and until the Court forfeits the property as part of the criminal judgment against Gordon. In any event, the question of the Government's "standing" is irrelevant. DSI seeks to intervene in these proceedings pursuant to Fed. R. Civ. P. 24. Rule 24 sets certain conditions under which intervention is permissible. If those conditions are not met (or if there is some other bar to DSI's participation in these proceedings), DSI's motion must be denied.

The Government contends that DSI may not intervene under Rule 24, because it failed to take advantage of the provisions of 21 U.S.C. § 853(n), which is the "exclusive means by which

a third party can assert his interest in forfeited property." United States v. Phillips, 185 F.3d 183, 186 (4th Cir. 1999).  DSI did not timely petition the Court to assert its interest in the property after receiving notice of the forfeiture order in March 2004.  Courts have stated that such failure constitutes waiver of a party's right to assert an interest in forfeited property.  See United States v. McCorkle, 143 F. Supp. 2d 1311, 1322 (M.D. Fla. 2001); United States v. Strube, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999); see also United States v. Gilbert, 244 F.3d 888, 910-11 (11th Cir. 2001) (applying analogous provisions of 18 U.S.C. § 1963(l)).  This Court need not decide, however, whether this failure to petition irrevocably waives DSI's right to intervene in these proceedings, since that intervention cannot be permitted in any event.

DSI and the Government agree that DSI could *not* intervene pursuant to section 853(n), because, as a general creditor of Kings, it does not satisfy that provision's requirement that a petitioner have a "legal interest in the property" to be forfeited.  21 U.S.C. § 853(n)(2); see also id. § 853(n)(6)(A); United States v. Ribadeneira, 105 F.3d 833, 834-35 (2d Cir. 1997).  They disagree about the consequence of that incapacity, however:  The Government posits DSI's disqualification to pursue remedies under section 853(n) as a further reason why DSI should not be permitted to intervene in these proceedings; DSI argues that, with section 853(n) unavailable to it, Rule 24 becomes its only recourse to contest what it claims is an unauthorized effort to forfeit property that is not subject to forfeiture.

The Government's position is more persuasive.  Even if DSI had timely attempted to intervene under section 853(n), the critical fact is that it has no standing to object to the forfeiture of proceeds of the sale of Kings's (Gordon's) shares.  As DSI concedes, it sold the shares to Kings/Gordon, in return for approximately $23 million in cash and a $4 million promissory note.

As a consequence of this transaction, all 7923 shares passed to Gordon. DSI did not transmit 85% of the shares and retain 15% until the promissory note was paid. Nor did DSI retain a security interest in 15% of the shares, or in 15% of the value of all of the shares. Thus, DSI retained no legally-cognizable interest in any portion of the shares.

This is no mere technicality. While DSI's claim derives from the purchase of the shares, as a matter of law, having failed to retain a security interest in the shares, DSI is simply a general creditor of Kings, and its claim to any specific property Kings may possess is no greater than that of any other such creditor. Cf. Ribadeneira, 105 F.3d at 836 ("[A]lthough general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate." (quotation omitted)). The remedies of section 853(n) are deliberately designed to prevent a defendant's general creditors from intervening in forfeiture proceedings solely on the theory that, if fewer of the defendant's assets are forfeited, more will be available for his creditors. Forfeiture proceedings, and particularly criminal forfeiture proceedings, which are an aspect of sentencing in a criminal case, are intended to be expeditious, and to effect an adjustment of rights as between the defendant and the Government.

Of course, as is recognized in section 853(n), due process requires that persons who claim a legal interest in property that the Government seeks to forfeit must be given an opportunity to be heard on their claim that the property belongs, in whole or in part, to them and not to the defendant. It does not follow, however, that persons claiming merely that they would be advantaged in some way if the defendant were allowed to keep more of his assets should be allowed to intervene to object to the forfeitability of assets admittedly belonging to the defendant, any more than such general creditors will be heard to argue at sentencing in favor of a lower fine

or a shorter jail sentence, because they would benefit if the defendant retained more assets or could earn more money as a free man.

Lacking a legally-cognizable property interest in the funds sought to be forfeited, DSI has no right to intervene under Rule 24(a), section 853(n), or any other provision of law. The interests of efficient administration of the criminal law discussed above warrant denial of permissive intervention under Rule 24(b), assuming arguendo that Rule 24 has any application to criminal proceedings.

Finally, DSI objects to a portion of the Government's proposed final order of forfeiture noting that "DSI is free to petition the Attorney General for remission or mitigation of the forfeiture, pursuant to 21 U.S.C. § 853(i) and 28 C.F.R. Part 9." DSI argues that under the relevant regulations, a general creditor may *not* petition for remission or mitigation. See 28 C.F.R. § 9.6(a) ("A general creditor may not be granted remission or mitigation of forfeiture unless he or she otherwise qualifies as petitioner under this part."). Neither the Government nor DSI directs the Court to any regulatory provision under which DSI might qualify for remission for mitigation of forfeiture.

Nevertheless, the governing *statute* grants the Attorney General extraordinarily broad discretion over the handling of forfeited funds. Under 21 U.S.C. § 853(i), the Attorney General "is authorized to--(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, *or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section.*" (Emphasis added.) It thus would appear that the statute clearly grants the Attorney General broader discretion to entertain an application for relief than the regulations

contemplate, in the interest of justice. In light of the Government's specific invitation to DSI to make such an application, it cannot be assumed that the Government has foredoomed such an application, or would refuse to consider an application in good faith. Of course, such consideration might not lead to the relief DSI seeks; the Attorney General might decide for a variety of reasons that it is inappropriate to favor DSI over other general creditors of Gordon or Kings. However, it is at least possible that the Attorney General would conclude that, if the total assets available for forfeiture exceed the amount stolen by Gordon, some accommodation of DSI, which is at least an indirect victim of Gordon's criminal behavior, is in the interest of justice. Cf. 28 C.F.R. § 9.2(o), (v) (permitting petitions by victims and defining "victim"). At any rate, it appears clear that such an accommodation would be within the power of the Attorney General under section 853(i)(1).

Accordingly, for the reasons stated above, the motion of DSI to intervene in this case is denied.

SO ORDERED.

Dated:      New York, New York
            October 13, 2005

                                                              _____
                                                              GERARD E. LYNCH
                                                              United States District Judge